## SULKIN v STATE

Ohio Appeals, 6th Dist, Lucas Co

Decided June 26, 1935

## OPINION

Cornell Schreiber, Toledo, and Paul J. Ragan, Maumee, for plaintiff in error.

Frazier Reams, Prosecuting Attorney, Toledo, Harry Friberg, Assistant Prosecuting Attorney, Toledo, and J. S. Rhinefort, Toledo, for defendant in error.

By LEMERT, PJ.

The errors complained of are submitted under five separate heads and in this opinion we will discuss them in the order named.

First. That the verdict is manifestly against the weight of the evidence.

Second. The court erred in receiving evidence offered by the state over the objection and exception of defendant below.

Third. Misconduct of prosecutors during trial.

Fourth. Misconduct in closing argument of prosecutors.

Fifth. Errors in the charge of the court.

The state contends that the defendant below, Sulkin, and the other persons named in the indictment, conspired together for the purpose of controlling the liquor and gambling business and extorting money from legitimate business, and that these murders were committed in the furtherance of such conspiracy.

From a careful examination of the record before us, the same shows that the defendant, Sulkin, was one of the leading conspirators in the gang's activities, and that there was ample evidence to convict him. For the proper discussion of the law pertaining to the question of conspiracy we

have to say that the term conspiracy, as defined in 8th **Jurisprudence, 41,** is as follows:

"A conspiracy is a combination of two or more persons by some concert of action to accomplish some criminal or unlawful purpose or some purpose not in itself criminal or unlawful, by criminal or unlawful means."

In the case at bar, the indictment charges the defendant with unlawfully, purposely, and of deliberate and premeditated malice, conspiring to kill and murder and killing and murdering the various persons. The proof, as shown by the record, fully establishes this unlawful and criminal purpose. Any person who takes part in a conspiracy, whether as a party to the agreement or by wilfully doing an act in furtherance of a common design, is liable as a conspirator.

"The general rule is well settled that, where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine. In contemplation of law, the act of one is the act of all. The law considers that, wherever they act, they renew, or, perhaps, to speak more properly, they continue their agreement, and that this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design. It is immaterial, as affecting the question of co-equal responsibility, that one or more were not actually present at the consummation of the preconcerted design, or that the conspirator who committed the act cannot be identified, or that the act charged may not have been arranged for. Each is responsible for everything done by his confederates, which follows incidentally in the execution of the common design as one of the probable and natural consequences, even though it was not intended as a part of the original design or common plan." **12 Corpus Juris, 577.**

Keeping in mind the fundamental principles, the conspiracy, as just quoted, and applying this law to the record before us, we find that the defendant, and those indicted with him, were frequently seen in company with each other. The record discloses that they frequently met at the Argonne Hotel, Hill Avenue Gardens, Golden Rose Show Boat, Fretti Brothers Slot Machine Place, State Sales, Petler's Filling Station, Bancroft Grill, and at the homes of Yonnie Licavoli and Ralph Carsello.

The record also discloses that the members of this gang had no known employment and usually went around from place to place armed.

The record also discloses how elaborate the preparations were made for the killing or murder of Jack Kennedy. How the defendant, Sulkin, purchased a revolver from a pawn broker's clerk. How the same revolver was used in the murder of Kennedy. How the defendant, Sulkin, helped arrange the rental of a cottage at Point Place, near where Kennedy resided. How this cottage was occupied by one of the members of the gang, Leo Moceri. How this same Leo Moceri, on the day that Kennedy was murdered was seen at the home of the defendant, Yonnie Licavoli, cutting up license plates. How one of the cars at the scene of the murder had fictitious license plates. How others of the defendants were seen at the home of defendant, Carsello, on the night that Kennedy was murdered. How Mrs. Carsello told defendant, Lassallo, "You were told to stay away from here tonight." How the members of the gang observed the movements of Kennedy on the night of the murder from the rear of Kennedy's residence, and how the members of the gang committed the murder. This, together with the other testimony, offered in the record, conclusively proved the conspiracy. The verdict of the jury was amply supported by the evidence.

On the second claimed ground of error, we have to say that after a reading of the record in the instant case, we are convinced that the facts proven create, not only an inference that the murder was in furtherance of the conspiracy, but an inevitable conclusion to that effect. That being true, it follows, as a matter of course that if the evidence in the case is sufficient to sustain a verdict of guilty that the court did not err in refusing to direct a verdict of not guilty for the defendant. On the contrary it would have been error for the court below to have done so.

"On the matter of receiving evidence offered by the state, over the objection and exception of defendant, we have to say that a conspiracy may be proved by circumstances and when the circumstances tend to prove a conspiracy, it is for the jury and not the court to determine their sufficiency to prove that fact beyond a reasonable doubt." People v Moran, 77 Pacific, 777.

It is not essential to establish conspiracy

that actual proof be offered of a definite plan or agreement entered into by conspirators, but it is sufficient if the evidence shows a concert of action in the commission of the unlawful act, or other facts and circumstances, from which the natural inference arises that the unlawful overt act was in furtherance of a common design and purpose of the conspirators.

The plaintiff in error, under this claimed ground of error makes the further claim that improper and leading questions were put to the witnesses for the state. On this contention, we have to say that leading questions may be permitted in the court's discretion, and are not grounds for reversal where no prejudice appears. The mere fact that leading questions are improperly allowed is not error for which the judgment will be reversed. The allowing or refusing of leading questions in the examination of a witness must very largely be subject to the control of the court in the exercise of a sound discretion.

In the case at bar, it was evident that a great many of the witnesses were filled with fear and had the court not allowed the state to ask leading questions, the truth might never have been discovered. It should be the object of all judicial inquiries to ascertain the truth and put it into action. We find no error in this regard.

On the third claimed ground of error, to-wit, misconduct of prosecutors during trial, we find from the record in the instant case, that the trial of this case consumed many days and the record contains almost two thousand pages, and that during the trial of the case, which was very stubbornly and ably fought on both sides, and the objections by counsel for both the state and the defendant were numerous and technical and there was constant bickering and some heated argument between counsel during the trial of the case, and the court was constantly being called upon to admonish counsel in their conduct, but we find from the record that the court was extremely careful to take care of such matters and on such occasions admonished and instructed the jury to disregard any and all matters that might have been prejudicial to the rights of the defendant.

The record discloses that anything bordering upon the line of misconduct was not only and solely upon the part of the prosecutors, and we find that the attorneys for the defendant by their examination of witnesses and conduct, in their zeal to protect the rights of their client, caused the prosecutors and the court no little annoyance by their frequent objections and insinua-

tions directed at counsel, but after summing it all up we are of the opinion that no prejudicial error intervened in this case, calling for a reversal on this ground.

Coming to the fourth claimed ground of error, misconduct in closing argument of prosecutors, we have to say that in a criminal case, where improper remarks are made in a closing argument, by counsel for the state, in replying to statements of counsel for the defendant, upon the same subject matter, and objection is made thereto by defendant's counsel, and the court immediately instructs the jury to disregard such argument on behalf of the state and to draw no conclusions with reference to those particular matters prejudicial to the defendant, under such circumstances no prejudicial error appearing to have resulted therefrom, a verdict will not be disturbed upon that ground. Much reliance must be placed in the trial court to see that a fair trial is had and that no injustice is done either party. This is his highest duty and only when he appears to have failed in this great trust will a reviewing court intervene. The trial judge, who hears the arguments of opposing counsel, is in a better position than the Appellate Court to determine whether he should interfere because of improper remarks, it being a matter within his sound discretion, and it is only where such discretion has clearly been abused that a higher court will reverse the judgment for such cause. Improper language, used in argument, is not ground for reversal where such language was provoked by the remarks of counsel for the adverse party, unless it appears quite plainly that the verdict was influenced thereby, and especially is this true where exceptions to the argument are sustained and the jury specifically instructed to disregard it.

On this question, this court, sitting in the sase of **Shellenberger v State, 26 O.L.R., 619,** holds:

"Misconduct of the prosecuting attorney in his argument to the jury, which drew a caution from the court, but to which no exception was taken at the time, does not call for a reversal of the judgment, where the remarks were, to some extent, provoked, and there is nothing to show that the result was in any way influenced thereby."

On the fifth claimed ground of error, to-wit, errors in the charge of the court, we have carefully read the entire charge of the trial court and we are impressed with the fact that it was imminently fair to the defendant.

"Whether there was prejudicial error in the charge of the court cannot be decided from an excerpt taken from the charge, but consideration must be given to the charge as a whole as in the interpretation of a will or other instrument in writing." **Deibel v State, 30 O.L.R., 378.**

When we consider the charge in the instant case as a whole, we are very much impressed with the fact that the jury could not possibly have been misled thereby. Each subject was fully covered and the rights of the defendant were repeatedly emphasized.

We note from the charge, as given, that the court, among other things, said:

"It is incumbent upon the state, before it can exact a conviction by your verdict, to establish, by evidence, which convinces you beyond a reasonable doubt, the truth of each of the averments essential to constitute the crime charged. The indictment creates no presumption of guilt against the defendant. On the contrary, the law presumes everyone charged with crime to be innocent until his guilt is established beyond a reasonable doubt.

"The defendant is entitled to this presumption in the consideration of this case and until the jury believes, beyond a reasonable doubt, that the evidence establishes his guilt.

"On the other hand, the jury ought not to condemn unless the evidence removes from your minds all reasonable doubt as to the guilt of the accused and you would venture to act upon it in a matter of the highest concern or importance to your own interest. You will be justified and required to consider a reasonable doubt as existing if the material facts, without which guilt cannot be established may fairly be reconciled with innocence.

"You will be required to find a reasonable doubt exists if the material facts may fairly be reconciled with innocence. The entire evidence should be examined carefully and conscientiously, and if that convinces you of the defendant's guilt, it is your duty to say so, but if, after full and careful consideration, you, as jurors, are not so convinced, but find that there are only strong probabilities of guilt, under such circumstances a reasonable doubt is said to exist and such reasonable doubt would entitle the defendant to an acquittal.

"A mere preponderance or overweight of the evidence is not sufficient in a criminal case as it is in a civil case, but the proof must be such as to create a clear and undoubted conviction in your minds that each material fact exists necessary to establish the defendant's guilt.

"Now, before a conviction of the defendant can be had in this case the murder in the first degree, as set forth in this indictment, and each count in this indictment, there are certain essential elements of such crime, which must be established by the state, beyond a reasonable doubt."

The court then proceeds to fully describe and define each element of the crime of murder in the first degree.

A careful reading and study of the whole record in this case convinces us that the defendant is guilty, as charged, and that he had a fair and impartial trial and that the verdict of the jury must be sustained and that substantial justice has been done and that the defendant has been justly and legally convicted.

We desire to add and say that it is high time for gangsters and gunmen to realize that there are sufficient laws in this country to protect society, if properly enforced. It is time that they should be taught that they cannot go out and violate these laws with impunity. Too long have we been administering our criminal laws to protect the rights of the accused and in our zeal to see that his rights are protected we forget the public society and their rights. As a result, lawlessness is rampant in our land and the police and other law enforcement agencies have been unable to cope successfully with criminal elements. After all, it should be remembered that the object of our criminal statutes is twofold. First, to convict the wrongdoer, and second, to protect the innocent. The rights of the public are to be considered as well as those of the accused. The niceties and refinements of reasoning, which have been indulged in by the courts in the past are no longer looked upon with favor, and it is to be hoped that we have reached the point in the administration of criminal justice where the rights of the public will be given some consideration and innocent persons be protected against the aggressions of those who are criminally inclined, and that the rules of criminal pleading and practice will not be as freely employed on behalf of accused persons as in the early common law administration of criminal justice.

We find no error prejudicial to the rights of the defendant in this record. It therefore follows that the judgment of the trial court and the verdict of the jury must be and the same is sustained. The judgment will be affirmed. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.